No. 46,430

STATE OF KANSAS, *Appellee, v.* WILLIAM W. HARDING, *Appellant.*

(494 P. 2d 1122)

Opinion filed March 4, 1972.

*Scott E. Jarvis,* of Topeka, argued the cause and was on the brief for the appellant.

*Gene M. Olander,* County Attorney, argued the cause, and *Vern Miller,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a criminal action wherein the defendant waived a trial by jury and was convicted of burglary and larceny in violation of K. S. A. 21-520 and 21-524. Appeal has been duly perfected.

The only issue presented for review is whether the circumstantial evidence disclosed by the record is sufficient to sustain the findings of guilty made by the trial court.

The record discloses two police officers were on routine patrol when, at approximately 12:39 a. m. on March 28, 1969, they found an automobile parked in a "No Parking Zone" at approximately 18th Street and Gage Boulevard, Topeka, Kansas. The keys were in the ignition switch and the vehicle was unattended. Upon examination it was discovered the hood of the unattended automobile was warm. The two officers then moved one block away from the parked car, but kept it under observation. At approximately 12:50 a. m. the defendant walked across the south lawn of the Glad Tidings Assembly of God Church to the unattended automobile parked at the curb. The two officers then closed in upon the defendant and

the unattended car. A back-up police officer arrived in a police car and informed the first two officers that a door was open on the north side of the church. The defendant at this time was placed in the rear seat of the prowl car and driven to the north side of the church. One police officer remained in the prowl car while the other officer and a back-up officer entered the church through the open door which bore no signs of breaking or forcing, the door not having been locked but closed. Once inside it was learned that an office had been left in a state of untidiness with file drawers open and papers strewn about. Rev. L. L. Ammons, pastor of the Glad Tidings Church, was called, as well as a police department detective.

The other officer testified he observed defendant walking across the street from the lawn of the Glad Tidings Church to his parked car. He read the defendant his rights after he had been placed in the prowl car and driven the short distance to the church. He testified he observed money in a clip in the hand of the defendant. The defendant had taken a number of one dollar bills from his pocket and had asked this witness if he wanted them and then placed the bills in his money clip and returned the same to his pocket. The defendant told this officer he had parked his car there and walked across the lawn of the church in question to what he thought was the car of a friend parked in the area.

A third police officer testified that he had entered the church building through an unlocked door and found every door leading from the church to the outside closed but not locked. None bore signs of forced entry. He further testified the defendant told him he was waiting over by the church for a friend. This officer testified he would estimate that the north edge of the church was 50 to 75 feet from the street, and that it is farther from the south edge of the church to 18th Street; and that the church is 15 to 20 feet from Gage Boulevard. He further testified one could see the south door of the church from the outside at night.

Don Demore was called as a witness on behalf of the state and testified he was a detective for the Topeka Police Department; that he was on duty the night in question and was called to the Glad Tidings Church. He testified he processed the area and found nothing in the way of physical evidence which would directly relate to the defendant. The defendant told him he was in the same church earlier in the evening and visited with the preacher there concerning religious services for patients at Topeka State Hospital.

Rev. L. L. Ammons was called as a witness on behalf of the state and testified that the entrance is always open to the church, and that his office is normally locked. Sometime during the evening money was placed in a desk drawer in an office in the church. The drawer was open and the money was gone when he was called back to the church in the early morning hours by the police. He further testified he had talked to the defendant earlier in the evening at approximately 8:30 on March 27, 1969, inside the church during a revival service. However, at this time defendant had given Rev. Ammons a fictitious name.

Harold Turntine, treasurer of the Glad Tidings Church, was called as a witness on behalf of the state and testified that on March 27, 1969, a collection was received amounting to $13.54, placed in the desk drawer and the desk locked. He stated he did not return to the church that night. It was stipulated that at the time of booking the defendant had on his person $65 in bills and $9.02 in change.

The defendant chose to testify in his own behalf. He testified he had parked his car approximately at the corner of 18th and Gage; that he had walked across the churchyard; that he had rested for a moment by the church and returned to his car again walking across the churchyard. He denied any wrongdoing. He further testified he had been a mental patient at Topeka State Hospital for five years at one time in the past.

The trial court found the defendant guilty as charged and referred to the circumstantial evidence against the defendant as overwhelming. The court said "a finding by this court otherwise would be inconsistent with any other rational conclusion."

The strength of well developed circumstantial evidence was discussed in *State v. Hale*, 207 Kan. 446, 485 P. 2d 1338 as follows:

"It is well established that a conviction, even of the gravest offense, may be sustained by circumstantial evidence. (*State v. Kennedy*, 124 Kan. 119, 257 Pac. 944.) This court has even said that inferences drawn from admitted or well authenticated facts may be stronger and more convincing than the testimony of witnesses who, albeit unwittingly, may not have been telling the truth. (*State v. Evans*, 115 Kan. 538, 541, 224 Pac. 492.) This declaration accords with the concept, generally held, that circumstantial evidence may be more trustworthy than eyeball testimony. (30 Am. Jur. 2d Evidence, § 1091, pp. 249, 250.)" (p. 449.)

The weight to be given circumstantial evidence is to be determined by the trier of the facts. It is not the function of this court

to weigh the evidence. (*State v. Gregory,* 191 Kan. 687, 383 P. 2d 965.)

When considering on appeal the sufficiency of circumstantial evidence to sustain a conviction of crime, the question before this court is not whether the evidence is incompatible with any reasonable hypothesis except guilt. That was a question for the trier of the facts. The function of this court on appeal is limited to ascertaining whether there was a basis in the evidence for a reasonable inference of guilt. (*State v. Brizendine,* 114 Kan. 699, 220 Pac. 174, Syl. ¶ 4; and *State v. Gregory,* supra.)

For other decisions of like import see *State v. Fouts,* 169 Kan. 686, 691, 221 P. 2d 841; *State v. Rhoten,* 174 Kan. 394, 399, 257 P. 2d 141; *State v. Dill,* 182 Kan. 174, 319 P. 2d 172; and *State v. Cooper,* 190 Kan. 101, 372 P. 2d 289.

Without further elaboration the cases relied upon by the appellant, *State v. Doyle,* 201 Kan. 469, 441 P. 2d 846; and *State v. Ragland,* 170 Kan. 346, 226 P. 2d 251, are readily distinguishable.

A careful review of the record presented on appeal discloses there was basis in the evidence for a reasonable inference of guilt.

The judgment of the lower court is affirmed.